CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

May 28, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

Darren Lamont Rice,                      )
                                         )
              Plaintiff,                 )
                                         )
v.                                       )        Civil Action No. 7:25-cv-00234
                                         )
Dir. Chadwick Dotson *et al.*,[1]         )
                                         )
              Defendants.                )

**MEMORANDUM OPINION**

Plaintiff Darren Lamont Rice, an incarcerated individual proceeding *pro se*, filed this action under 42 U.S.C. § 1983. (Compl. at 1 (Dkt. 1).)

This matter is before the court on respective motions to dismiss by Defendants Chadwick Dotson and Benny Mullins, (Dkt. 59), and Defendant Luciano D'Amato, (Dkt. 61). For the reasons that follow, the court will grant the motions to dismiss and will dismiss Rice's federal claims against Defendants D. Davis, an unnamed Quality Health Services Improvement Unit "Office Holder," T. Townsend, David Nauss, Major T. Hall, and Unit Manager Samuel Caughron pursuant to 28 U.S.C. § 1915A. The court will also decline to exercise supplemental jurisdiction over Rice's state law claims.

---

[1] Rice named Dotson as a Defendant in his second amended complaint. On January 17, 2026, Joseph W. Walters succeeded Dotson as Director of the Virginia Department of Corrections (VDOC). While normally a defendant sued in his or her official capacity is automatically substituted, Fed. R. Civ. P. 25(d), for reasons stated in this Memorandum Opinion, substitution would be futile.

## I.    Background

### A.  Factual Background

Rice was incarcerated at the Wallens Ridge State Prison ("WRSP") in Big Stone Gap, Virginia, when the events described in his second amended complaint allegedly occurred.  (*See* Dkt. 57 at 4).  Rice makes the following factual allegations in his second amended complaint, which the court accepts as true when analyzing the motions to dismiss.  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017).

In June 2023, D'Amato, a private physician, performed hernia surgery on Rice. (Second Am. Compl. at 1 (Dkt. 57-2).)  Following the surgery, Rice experienced complications including incontinence as well as blood in his urine and stools.  (*Id.* at 1–2.)  Immediately after the surgery, D'Amato told certain unnamed correctional officers that Rice "could not leave unless [he] urinated."  (*Id.* at 1.)  The correctional officers later joked about urinating for Rice "[s]o they [could] go home[,]" and an unnamed nurse told Rice that he was catharized in surgery so he was "good."  (*Id.*)  Ultimately, Rice was "le[t] out of medical [observation] at [WRSP]" despite having "[n]ever urinated."  (*Id.*)  An unnamed nurse at WRSP later told Rice that he had nerve damage and that blood was "not properly flowing through [his] private[s]."  (*Id.*)

After surgery, D'Amato and Nauss, another private physician, prescribed Rice three doses of fentanyl.  (*Id.* at 2.)  Rice overdosed on the fentanyl and was given Narcan.  (*Id.*)  Rice characterizes these events as D'Amato and Nauss having "killed [him] and brought [him] back to life," and states that he suffered resulting injury to his organs.  (*Id.*)

Mullins, a physician at WRSP, placed Rice on certain medications before and after the

surgery. (*Id.* at 3.)  After suffering pain and complications for eight or nine months, Rice asked Mullins to send him to a specialist for treatment.[2] (*Id.*)  Mullins did not send Rice to a specialist and instead sent him to back to D'Amato. (*Id.*)  When Rice told Mullins that he did not want to see D'Amato again, Mullins told Rice that he could either "go to D'Amato or refuse treatment." (*Id.*)  After Rice saw D'Amato again, the physician noted that "something maybe [sic] wrong" with Rice and told Mullins to send Rice to see a specialist. (*Id.*)  Rice did not see a specialist until months later, and his appointment had to be rescheduled because the specialist was not given Rice's medical files. (*Id.* at 3.)  During his appointment with the specialist,  Rice was told that he had an infection and needed additional surgery. (*Id.* at 4.)  Rice was never sent back to the specialist for a follow-up appointment. (*Id.*)

Subsequently, Mullins placed Rice on pain medications "[b]ut refused to send [him] back to [the] specialist." (*Id.*)  In February 2025, however, Rice was taken off the pain medications after his liver enzymes were shown to be "critical." (*Id.*)  Rice  provided a urine sample to Mullins who subsequently prescribed Rice amoxicillin. (*Id.*)  Mullins later "came to see" Rice on April 9, 2025. (*Id.* at 5.)  Certain unnamed counselors were present at this meeting, and the counselors refused to leave after Rice requested that they do so. (*Id.*)  Mullins discussed Rice's medical condition in front of the counselors, which Rice claims "violated HIPAA." (*Id.*)  Rice told Mullins he would "see him (Mullins) in court," and Mullins "kept [Rice] off all pain medicine." (*Id.*)

In July 2025, Mullins "bribed" Rice to drop a lawsuit against D'Amato, Mullins's

---

[2] Rice alleges that around this time a correctional officer "shot [him] in [the] eye" because he was "complaining . . . about pain." (Second Am. Compl. at 3.)  Rice does not identify this correctional officer, nor does he appear to bring a claim against the officer.

"friend." (*Id.* at 7.)  Specifically, Mullins told Rice that he would refer him to the VCU Medical Center in Richmond, Virginia for treatment in exchange for Rice dropping the lawsuit.  (*Id.*)  Rice told Mullins that he would "think about . . . dropping [the] lawsuit" if doing so would improve his health.  (*Id.*)  Rice was never sent to VCU for treatment.  (*Id.*)  In July 2025, Mullins prescribed Rice pain medications that the physician previously said would "destroy" Rice's liver and kidneys.  (*Id.*)  Rice claims that "[t]hey" tried to take more blood samples from Rice but that he "refused."  (*Id.*)  Regarding his liver enzymes, Rice was not provided a "fix" for this medical issue and was merely told by Mullins and others to drink water.  (*Id.*)

Townsend, a registered nurse at WRSP, ordered other nurses to take nearly fourteen "tubes" of blood from Rice.  (*Id.* at 4.)  Townsend  also "moved [Rice] from medical [observation] at 12 am" one day, "stating [that] they need[ed] room."  (*Id.*)  Later, Townsend "summoned" Rice and took more blood samples from him.  (*Id.* at 5.)  During this interaction, Townsend asked Rice about his "issues" with staff at WRSP in the presence of certain counselors.  (*Id.*)  Rice told the counselors to leave and Townsend that he was not "dropping anything" regarding staff at WRSP.  (*Id.*)  Rice asked for another nurse to take his blood sample.  (*Id.* at 5.)  He became ill and was refused pain medication after returning to his cell.  (*Id.* at 5–6.)

On April 8, 2025, Davis, another registered nurse at WRSP, responded to a "medical emergency" in Rice's pod but "refused to assess [Rice]."  (*Id.* at 5.)  During this interaction, Davis stated, "[h]is mom calls up here, she can help him" and told Rice to "get off the floor" and to "stop embarrassing [himself]."  (*Id.*)  According to Rice, certain witnesses, including Caughron, observed Rice vomiting blood in his cell.  (*Id.*)

Hall and Caughron, who were both correctional officers at WRSP, "became apart [sic] of destroying the facts of [Rice's] [t]ruth." (*Id.* at 6.)  Rice claims that from April through September 2025, "knives were planted, threats [were made,] and [his] mail [went] missing." (*Id.*)  Rice also claims that Hall "continued to try and force [Rice] [into] general population [despite] knowing of [his] medical condition." (*Id.*)  According to Rice, Caughron, Hall, and someone named "R. Coleman" wrote Rice "charges" for refusing to go into general population. (*Id.*)

Rice claims that the actions of which he complains were "done under" Dotson, the former Director of the VDOC. (*Id.* at 8.)  Rice claims that Dotson was aware of Rice's issues "due to his position." (*Id.*)  Rice further claims that an unnamed "Office Holder" with the Quality Health Services Improvement Unit (Quality Health) did not adequately investigate his medical issues. (Dkt. 57-1 at 1; *see* Second Am. Compl. at 8.)  Specifically, Rice claims that the office holder only spoke to WRSP staff and not to Rice. (Second Am. Compl. at 8.)

## B.  Procedural Background

On July 25, 2023, Rice executed his initial complaint. (Compl. at 2.)  Rice's initial complaint named three Defendants: Dotson, Mullins, and D'Amato. (*Id.* at 1.)  The initial complaint only related to Rice's dissatisfaction with his treatment for his hernia and subsequent claimed complications. (*Id.* at 2.)  But in additional documents, Rice mentioned other events, such as being shot in the eye and other medical issues. (*See* Dkts. 1-1, 23, 25, 26.)

Cognizant of Rice's *pro se* status, the court granted him an opportunity to clarify his claims. (Dkt. 27.)  Rice then filed an amended complaint which added six new Defendants:

the unnamed Quality Health Office Holder, Davis, Townsend, Nauss, Hall, and Caughron. (Am. Compl. at 1–2 (Dkt. 32).)  Upon review, the court determined that the amended complaint did not clarify matters and gave Rice a second and final opportunity to amend his complaint. (Dkt. 56 at 5–10.)  The court specified that any further amended complaint would replace all prior versions and would be the sole document the court would consider in determining whether Rice had stated any plausible claims.  (*Id.* at 9.)  Rice filed a second amended complaint naming the existing Defendants and bringing official capacity, deliberate indifference, equal protection, "life and liberty," right to travel, Health Insurance Portability and Accountability Act violation, and state law claims against the Defendants.  (Dkt. 57-1; Second Am. Compl.)  The second amended complaint is the operative pleading.

Dotson, Mullins, and D'Amato have filed motions to dismiss Rice's second amended complaint.  (Dkts. 59, 61.)  Rice responded, (Dkt. 63), D'Amato replied, (Dkt. 64), and the motions are ripe for review.

## II.    Standard of Review

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).   In making this evaluation, the court

accepts all well-pled facts as true; however, it need not assume the truth of any "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," as these are not well-pled facts. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### III.    Analysis

The court gave Rice multiple opportunities to allege specific facts supporting his claims. (*See* Dkts. 27, 56.)  The court also advised Rice that any second amended complaint would be his *final* opportunity to plausibly state his claims and would be the sole document the court would consider in assessing whether he stated plausible claims. (Dkt. 56 at 8–9 (emphasis added).)  Accordingly, the court considers only the allegations in the second amended complaint, and addresses Rice's claims against the Defendants in turn.

#### A. Claims Against All Defendants

1. Official Capacity Claims

Rice has sued the Defendants in their individual and official capacities. (Dkt. 57-1 at 1; Second Am. Compl. at 3–4.)  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Likewise, an official capacity suit against a private

individual treating inmates is a suit against the individual's employer. *Riddick v. Watson*, 503 F. Supp. 3d 399, 414–16 (E.D. Va. 2020). In either case, a plaintiff may not succeed on a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *Riddick*, 503 F. Supp. at 416. Instead, a plaintiff must show that the governmental entity or private employer's official policy or custom caused the plaintiff's constitutional injury. *Riddick*, 503 F. Supp. at 416. An official policy or custom can arise in the following four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). To survive a motion to dismiss, a plaintiff's "description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Allen v. Good*, No. 7:22-cv-00351, 2023 WL 5984287, at *6 (W.D. Va. Sept. 14, 2023) (quoting *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022)). "It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." *Lytle*, 326 F.3d at 473.

Rice does not identify any express policy or decision by a final policymaking authority that caused his alleged constitutional injuries. He also does not properly allege that his injuries were caused by an omission manifesting deliberate indifference[3] or a practice that is so

---

[3] The second amended complaint could be read to claim that Rice's injuries were caused by omissions attributable to Dotson. Indeed, Rice asserts a supervisory deliberate indifference claim against Dotson "due to his position." (Second Am. Compl. at 8.) But as discussed below, Rice has failed to adequately state this claim.

widespread as to constitute a custom with the force of law.  Accordingly, he has failed to adequately allege official capacity claims against the Defendants.

### 2.  Equal Protection, "Life and Liberty," and Right to Travel Claims

Rice claims that the Defendants violated his rights to equal protection, "life and liberty," and travel.  (Dkt. 57 at 5.)  But Rice does not plead sufficient factual content to support these claims.  And his "legal conclusions . . . and bare assertions devoid of further factual enhancement" are insufficient to state a claim.  *Nemet*, 591 F.3d at 255.

Although Rice is unclear on this point, the court understands his equal protection claim to be based on alleged disparate treatment.  But to succeed on such a claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated," *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001), and Rice has alleged no facts to support such a finding.  Rice's conclusory allegation that the Defendants deprived him of "life and liberty" fares no better.  *See Dale v. Hammonds*, No. 3:22-cv-00642, 2023 WL 3081302, at *3 (W.D.N.C. Apr. 25, 2023) (finding a *pro se* plaintiff's allusion to "life and liberty," among other things, to be "so deficient and conclusory that [it] fail[s] the most basic pleading requirements").[4]  And Rice's claim that the Defendants violated his right to travel is without merit.  *Williams v. Wisconsin*, 336 F.3d 576, 581 (7th Cir. 2003) (noting that for prisoners, "the right to travel is extinguished for the entire balance of their sentences" (citing *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976))).  Accordingly, Rice has failed to adequately state claims regarding his alleged deprivation of equal protection, "life and liberty," and the right to travel.

---

[4]  Cognizant of Rice's *pro se* status, his equal protection and "life and liberty" claims could be construed as deliberate indifference claims.  The court addresses these claims below.

## B. Constitutional and Federal Claims

### 1. D'Amato and Nauss[5]

Rice asserts Eighth Amendment claims against D'Amato and Nauss arising from Rice's hernia surgery and the physicians' subsequent treatment of Rice. (Second Am. Compl. at 1–2.) Rice claims that D'Amato "cut up and damaged [Rice's] nerves" during the surgery, and that this caused Rice to suffer complications such as incontinence, blood in his urine and stools, and the inability to "get an erection." (*Id.*) Rice further claims that D'Amato and Nauss prescribed him three doses of fentanyl following the surgery, and that he overdosed on the fentanyl and was given Narcan by the physicians. (*Id.* at 2.) According to Rice, this amounted to the physicians having "killed [him] and brought [him] back to life," and states that he suffered resulting injury to his organs. (*Id.*)

To show the medical treatment he received in prison amounted to a constitutional violation, Rice must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Lynch v. Hill*, No. 7:25-cv-00753, 2026 WL 1046595, at *2 (W.D. Va. Apr. 17, 2026) (noting that deliberate indifference claims brought by prisoners arise under the Eighth Amendment). To state an Eighth Amendment deliberate indifference claim, a prisoner must show both "an objective component and a subjective component." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). "The objective component . . . is satisfied by a serious medical condition," meaning one that "has 'been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* "The

---

[5] For organizational purposes, the court will jointly address some of Rice's claims against the Defendants.

subjective component is satisfied by proof of a defendant's deliberate indifference," which is shown where a defendant "had actual knowledge of the [plaintiff's] serious medical needs and the related risks[] but nevertheless disregarded them." *Id.* (quoting *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018)).

Rice has failed to allege sufficient facts to show that D'Amato and Nauss disregarded Rice's serious medical needs. On the contrary, Rice's own allegations show that the physicians acted to treat his medical condition. As Rice notes, D'Amato performed hernia surgery on Rice and requested that he see a specialist after a follow-up appointment. (Second Am. Compl. at 1.) D'Amato also instructed certain correctional officers that Rice could not return to his cell after the surgery until he urinated. (*Id.*) And the physicians prescribed Rice medication and treated him after he overdosed. (*Id.* at 2.) Moreover, Rice alleges no facts to show any delay in treatment attributable to D'Amato or Nauss.

Liberally construed, Rice appears to allege that D'Amato and Nauss's treatment of Rice was constitutionally deficient. Indeed, Rice alleges that he sustained nerve damage during his hernia surgery which caused subsequent complications, and that he overdosed on the fentanyl he was prescribed. At most, Rice's allegations *might* support a finding that D'Amato and Nauss were negligent or committed medical malpractice in treating Rice. But negligence in treating a medical condition does not suffice to state an Eighth Amendment claim, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Indeed, "[a]n Eighth Amendment violation occurs where treatment is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Gregory v. Prison Health Servs., Inc.*, 247 F. App'x 433,

434 (4th Cir. 2007) (per curiam) (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)). Rice has failed to plead sufficient facts to support such a finding as to D'Amato and Nauss. Moreover, medical defendants "may be found free from liability if they responded reasonably to [a] risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). Accordingly, Rice has failed to adequately state Eighth Amendment claims against D'Amato and Nauss.

2.  Mullins

Rice asserts what the court construes as two constitutional or federal claims against Mullins. First, Rice claims that Mullins was deliberately indifferent to his serious medical needs. Second, Rice asserts that Mullins violated his rights by speaking about his medical condition in front of unnamed counselors. The court addresses these claims in turn.

i.       *Deliberate Indifference*

In stating his deliberate indifference claim against Mullins, Rice appears to focus on four of the physician's specific acts or omissions. First, Rice alleges that Mullins initially refused to send him to a specialist for treatment and instead told Rice that he could see D'Amato again "or refuse treatment." (Second Am. Compl. at 3.) Second, Rice alleges that after seeing a specialist for treatment, Mullins "refused to send [Rice] back to [the] specialist." (*Id.* at 4.) Third, Rice alleges that Mullins prescribed him certain pain medications that the physician had previously said would "destroy" Rice's liver and kidneys. (*Id.* at 7.) Finally, Rice alleges that Mullins and others failed to "fix" Rice's critical liver enzymes and instead only advised Rice to drink water. (*Id.*)

As discussed, a plaintiff must show that a defendant disregarded his or her serious

medical needs to state a plausible deliberate indifference claim.  But Rice's allegations as to Mullins fail to make this showing.  As Rice's allegations show, Mullins continued to treat and prescribe medication to Rice throughout the events at issue in this case.  Mullins also adjusted Rice's medications throughout his treatment of Rice.  Moreover, although Rice alleges that his appointment with the specialist was delayed, he has alleged no facts showing that this delay was attributable to Mullins.

The focus of Rice's deliberate indifference claim against Mullins appears to be the physician's refusals to send Rice to a specialist for treatment.  But this, standing alone, is insufficient to state a deliberate indifference claim.  "The Constitution does not provide a right to specific medication or preferred treatment," *Farabee v. Gardella*, 131 F.4th 185, 194 (4th Cir. 2025), and "[a]n inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam) (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)). Moreover, to the extent that Rice questions Mullins's medical judgment, such questions "are not subject to judicial review." *Russell* , 528 F.2d at 319 (citing *Shields v. Kunkel*, 442 F.2d 409 (9th Cir. 1971)); *Maddox v. Johnson*, No. 7:09-cv-00179, 2010 WL 8750307, at *4 (W.D. Va. July 30, 2010) (noting that "questions of medical judgment are not subject to judicial review"). And to the extent Mullins was alleged to be negligent or engaged in medical malpractice in treating Rice, this does not suffice to state an Eighth Amendment claim.  *See Estelle*, 429 U.S. at 106.  Accordingly, Rice has failed to adequately state an Eighth Amendment claim against Mullins.

*ii.    HIPAA Violation*

According to Rice, Mullins violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") when he discussed Rice's medical condition in front of unnamed counselors. (Second Am. Compl. at 5.) Although HIPAA "prohibits the wrongful disclosure of . . . individually identifiable health information," "[t]he statute does not . . . provide a private right of action for any citizen." *Burkey v. Balt. Cnty.*, No. GJH-20-2006, 2021 WL 3857814, at *11 (D. Md. Aug. 30, 2021). And "neither the U.S. Supreme Court nor the Fourth Circuit has ever recognized a constitutional right in the privacy of prisoners' medical records." *Mallory v. Dorchester Cnty. Det. Ctr.*, No. 2:23-cv-01688, 2024 WL 2159789, at *8 (D.S.C. Apr. 24, 2024), *report and recommendation adopted*, 2024 WL 2155211 (D.S.C. May 14, 2024) (quoting *Van Higgins v. Miller*, No. 1:12-cv-00297, 2012 WL 4511524, at *2 (W.D.N.C. Oct. 1, 2012)). Accordingly, Rice's HIPAA claim against Mullins fails as a matter of law.

3.    Dotson

Rice alleges that Dotson "has been aware of [Rice's] issues due to his position." (Second Am. Compl. at 8.) Rice further alleges that Dotson hired the other Defendants "and refused to look into [Rice's] issues." (*Id.* at 9.)

As noted, a government official like Dotson cannot be held liable under § 1983 based on a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676. Instead, to state a claim against Dotson, Rice must show that the officer, "through his own individual actions, has violated the Constitution." *Id.* To state a claim of supervisory liability under § 1983, a plaintiff must allege facts sufficient to show:

- 14 -

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wall v. Clarke*, No. 7:19-cv-00260, 2021 WL 5444754, at *4 (W.D. Va. Nov. 22, 2021) (quoting

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

To satisfy the first element, a plaintiff must show that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw*, 13 F.3d at 799). With respect to the second element, "a plaintiff 'may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses.'" *Id.* Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799.

Rice's second amended complaint is devoid of allegations that would support these elements. He does not plausibly allege that Dotson had actual or constructive knowledge that his subordinates were engaging in conduct that posed a pervasive risk of constitutional injury, or that Dotson continuously failed to act in the face of "documented widespread abuses." *Montgomery*, 751 F.3d at 226. Moreover, Rice does not plead any facts showing a causal connection between Dotson's alleged inaction and Rice's claimed constitutional injury. At

bottom, Rice's "conclusory assertions against [Dotson] do not state a cognizable claim of supervisor liability under § 1983." *Carter v. Ely*, No. 7:20-cv-00713, 2022 WL 801585, at *4 (W.D. Va. Mar. 15, 2022).  Accordingly, Rice has failed to state a claim against Dotson.

### 4. Townsend

Although somewhat vaguely, Rice asserts what appears to be a deliberate indifference claim against Townsend.  In so doing, Rice makes what the court construes as four principal allegations.  First, Rice claims that Townsend ordered other nurses to take fourteen "tubes" of blood from Rice.  (Second Am. Compl. at 4.)  Second, Rice claims that Townsend took a urine sample from Rice.  (*Id.*)  Third, Rice alleges that Townsend had him removed from medical observation at 12 a.m. one day because staff "need[ed] room," which Rice questions. (*Id.*)  Finally, Rice alleges that Townsend falsely claimed that Rice wanted counselors present when discussing his issues with WRSP staff.  (*Id.* at 5.)

Rice has failed to state plausible claims against Townsend.  Regarding Townsend's involvement in the taking of blood and urine samples, Rice proffers no facts to show that these actions were grossly incompetent, inadequate, or excessive to state an Eighth Amendment claim.  *See Gregory*, 247 F. App'x at 434.  And although Rice may disagree with these actions, such disagreement is insufficient to state a deliberate indifference claim.  *See Sampson*, 536 F. App'x at 357.

Rice also fails to show that Townsend was deliberately indifferent to Rice's medical needs when she ordered his release from medical observation.  For one, Rice fails to show why he needed medical observation at that time.  Indeed, apart from stating that he still had stitches in his mouth, Rice does not describe his then-present medical condition.  (*See* Second

Am. Compl. at 4.)  Without more, the court cannot conclude that Rice has stated a plausible deliberate indifference claim against Townsend.

Finally, Townsend's allegedly false statements that Rice wanted counselors present when discussing his issues with staff does not suffice to state a constitutional claim.  *See Plascencia v. Turnquist*, No. 8:24-cv-00145, 2024 WL 3064039, at *5 (C.D. Cal. Feb. 2, 2024) ("[F]alse statements, alone, do not violate a prisoner's constitutional rights." (quoting *Mills v. Clarke*, No. 1:20-cv-00498, 2023 WL 3063287, at *6 (E.D. Cal. Apr. 14, 2023), *report and recommendation adopted*, 2023 WL 3466360 (E.D. Cal. May 15, 2023))).

Accordingly, Rice has failed to state a plausible claim against Townsend.

### 5.  Davis

Rice asserts a deliberate indifference claim against Davis.  Rice alleges that Davis responded to a "medical emergency" at Rice's pod but "refused to assess" Rice.  (Second Am. Compl. at 5.)  Rice further claims that Davis told him that his "mom calls up here, she can help him" and to "get off the floor" and "stop embarrassing [himself]."  (*Id.*)  Rice also claims that certain witnesses, including Coughran, observed Rice vomiting blood in his cell.  (*Id.*)

As an initial matter, the statements Davis allegedly made to Rice are insufficient to state a constitutional claim.  Verbal abuse, without more, does "not state a cognizable claim under § 1983."  *Wilson v. McKeller*, 254 F. App'x 960, 961 (4th Cir. 2007) (per curiam) (citing *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992)).

Moreover, Rice has failed to state a plausible deliberate indifference claim against Davis.  For one, apart from claiming to have suffered a "medical emergency," Rice does not adequately describe his condition at the time. (Second Am. Compl. at 5.)  And although Rice

claims that certain witnesses observed him vomiting blood, he does not allege that Davis did so or allege facts suggesting that Davis later learned that Rice had vomited blood.  To meet the subjective component of a deliberate indifference claim, a plaintiff must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed and that the defendant actually "dr[ew] the inference."  *Farmer*, 511 U.S. at 837.  Rice has failed to allege sufficient facts to support such a finding as to Davis. And "an official's failure to alleviate a significant risk that [s]he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  *Id.* at 838.  Accordingly, Rice has failed to state a deliberate indifference claim against Davis.

      6.  <u>Caughron and Hall</u>

Rice asserts what the court construes as two claims against both Caughron and Hall and one claim against each of them individually.  First, Rice claims that Caughron and Hall were "apart [sic] of destroying the facts of [his] [t]ruth."  (Second Am. Compl. at 6.)  In support, Rice claims that from April through September 2025, "knives were planted, threats [were made], and [Rice's] mail [went] missing."  (*Id.*)  Second, Rice claims that Caughron and Hall wrote Rice charges for refusing to go into general population.  (*Id.*)  As to Hall, Rice also claims that the officer tried to force Rice into general population despite "knowing of [Rice's] medical condition."  (*Id.*)  As noted, Rice also alleges that Caughron observed Rice vomiting blood in his cell.  (*Id.* at 5.)

Rice has failed to adequately state his two joint claims against Caughron and Hall. Regarding his first joint claim, Rice offers no facts connecting Caughron and Hall to the

actions of which he complains.  Rice's undifferentiated and passive-voice allegations that "knives were planted, threats [were made,] and [Rice's] mail [went] missing" fail to show that Caughron and Hall were individually involved in any constitutional violation, as is required. *See Iqbal*, 556 U.S. at 676; *see also Twombly*, 550 U.S. at 555 (noting that plaintiff must allege facts sufficient "to raise a right to relief above the speculative level").  Regarding his second joint claim, Rice alleges no facts suggesting that Caughron and Hall's writing of charges against Rice amounted to a constitutional violation.  And even if the charges were false, this, standing alone, would be insufficient to state a constitutional claim.  *Wilkins v. Rasnake*, No. 7:24-cv-00093, 2025 WL 974108, at *7 (W.D. Va. Mar. 31, 2025) ("The filing of a false disciplinary report or charge generally does not state a constitutional claim." (citing *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016))).

Rice's individual claims against Hall and Caughron fare no better.  As to Hall, Rice—in making what appears to be a deliberate indifference claim—alleges that Hall attempted to force Rice into general population despite "knowing of [Rice's] medical condition."  (Second Am. Compl. at 6.)  In support, Rice claims that his medical condition was "well documented" in (i) "VACORIS," (ii) documents related to "ICA meetings," (iii) certain body worn camera footage, and (iv) certain "paper documents."  (*Id.*)  However, Rice does not allege what these sources said about his medical condition.  Nor does he allege facts to show that Hall was aware of these sources or considered them.  Thus, the court cannot conclude that Hall was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed and that Hall actually "dr[ew] the inference," as is required.  *Farmer*, 511 U.S. at 837.

As to Caughron, Rice alleges that the officer observed Rice vomiting blood in his cell.

(Second Am. Compl. at 5.)   Although Rice never expressly states as much, the court understands him to raise a deliberate indifference claim against Caughron arising out of this allegation.  But the second amended complaint is entirely silent as to what Caughron did or did not do after observing Rice vomiting blood.  Accordingly, Rice has failed to adequately allege a deliberate indifference claim against Caughron.  *See Gordon*, 937 F.3d at 356 (noting that to show deliberate indifference, a plaintiff must demonstrate that the defendant "had actual knowledge of the [plaintiff's] serious medical needs and the related risks[] *but nevertheless disregarded them*" (emphasis added)).

Accordingly, Rice has failed to plead constitutional claims against Caughron and Hall.

7.   Quality Health Office Holder

Rice alleges that an unnamed "Office Holder" at Quality Health failed to adequately investigate his complaints of lack of adequate medical treatment.  (Second Am. Compl. at 8.)  Specifically, Rice alleges that the Office Holder "only spoke to" staff at WRSP and did not speak to Rice about his claims.  (*Id.*)

Although Rice never expressly states as much, the court understands Quality Health "to be a health care company under contract with [WRSP] to oversee health issues that arise with inmates." *Stone v. Sevier Cnty. Sheriff's Dep't*, No. 3:16-cv-00588, 2016 WL 6875888, at *3 (E.D. Tenn. Nov. 21, 2016).  And the court understands Rice to assert a deliberate indifference claim against the Quality Health Office Holder.

Regardless, Rice has failed to adequately state such a claim.  Assuming that the Office Holder is subject to suit under § 1983, Rice has alleged no facts to show that the Office Holder was deliberately indifferent to Rice's serious medical needs.  For one, Rice has proffered no

facts to show that the Office Holder was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed. *Farmer*, 511 U.S. at 837. He has likewise alleged no facts showing that the Office Holder actually "dr[ew] the inference." *Id.* Accordingly, Rice has failed to state a deliberate indifference claim against the unnamed Quality Health Office Holder.

### C. State Law Claims

In addition to his federal claims, Rice asserts various state law claims against certain Defendants. For example, Rice asserts state law negligence, gross negligence, and medical malpractice claims against D'Amato, Nauss, and Mullins. (Second Am. Compl. at 1–2, 7.) He also asserts what appears to be a state law civil conspiracy claim against Mullins arising out of the physician's alleged bribery of Rice. (*Id.* at 7.)

As noted, Rice has failed to adequately state any constitutional or federal claims against the Defendants. Rice has also failed to proffer any facts showing that the court has diversity jurisdiction over his state law claims. Under the circumstances, the court declines to exercise supplemental jurisdiction over Rice's state law claims pursuant to 28 U.S.C. § 1367(c)(3). Rice's state law claims will therefore be dismissed.

### IV.  Conclusion

For the reasons explained above, the court will **GRANT** the respective motions to dismiss by Dotson and Mullins, (Dkt. 59), and D'Amato, (Dkt. 61), **DISMISS** Rice's federal claims against Defendants D. Davis, the unnamed Quality Health Services Improvement Unit Office Holder, T. Townsend, David Nauss, Major T. Hall, and Unit Manager Samuel Caughron pursuant to 28 U.S.C. § 1915A, and **DECLINE** to exercise supplemental

jurisdiction over Rice's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

An appropriate Order will issue.

**IT IS SO ORDERED.**

**ENTERED** this __28th__ day of May, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE